

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 MAY -8 PM 3: 53

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

**U.S. Department of Justice**
*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Aaron S.J. Zelinsky*<br>*Assistant United States Attorney*<br>*Aaron.Zelinsky@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4985*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3091* |

April 13, 2017

Sedira Banan, Esq.
Assistant Federal Public Defender
100 South Charles Street, Ninth Floor
Baltimore, MD 21201

    Re:    United States v. Heather Wagoner, <u>Criminal No. ELH-16-271</u>

Dear Ms. Banan:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have her execute it in the spaces provided below. If this offer has not been accepted by Friday, April 21, 2017, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to a one count Information to be filed, charging her with Conspiracy to Commit Sex Trafficking, pursuant to 18 U.S.C. § 1594(c). The Defendant admits that she is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    From on or about October 15, 2014 and continuing through on or about December 19, 2014, in the District of Maryland and elsewhere, the defendant conspired with one or more other persons to knowingly recruit, entice, harbor, transport, provide, obtain or maintain a person, having a reasonable opportunity to observe that the person was below 18 years of age.

    b.    The defendant knew that the person would be caused to engage in a commercial sex act; and,

    c.    The recruiting, enticing, harboring, transporting, providing, obtaining or maintaining was done in or affecting interstate commerce.

1

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life imprisonment, up to lifetime supervised release and a mandatory term of five years of supervised release, and a $250,000 fine. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013 which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if she serves a term of imprisonment, is released on supervised release, and then violates the conditions of her supervised release, her supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.  The Defendant understands and agrees that as a consequence of her conviction for the crimes to which she is pleading guilty, she will be required to register as a sex offender in the place where she resides, where she is an employee, and where she is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of her residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.  The Defendant understands that by entering into this agreement, she surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in her plea of not guilty, she would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

    c.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    d. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in her defense, however, she would have the subpoena power of the Court to compel the witnesses to attend.

    e. The Defendant would have the right to testify in her own defense if she so chose, and she would have the right to refuse to testify. If she chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from her decision not to testify.

    f. If the Defendant were found guilty after a trial, she would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    g. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that she may have to answer the Court's questions both about the rights she is giving up and about the statement of the facts of her case. Any statements the Defendant makes during such a hearing would not be admissible against her during a trial except in a criminal proceeding for perjury or false statement.

    h. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find her guilty.

    i. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if she is not a citizen of the United States, pleading guilty may have consequences with respect to her immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

  6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following guidelines:

    a. The base offense level for **Conspiracy to Commit Sex Trafficking of a Minor** is thirty (30) pursuant to U.S.S.G. §§ 2G1.3(a)(2) and 2X1.1(a).

    b. Two levels are added pursuant to U.S.S.G. § 3C1.1, because the Defendant attempted to obstruct or impede the administration of justice with respect to the offense of conviction. (SUBTOTAL: 32)

    c. Two points are added pursuant to § 3B1.1(c), because the Defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that described in §3B1.1(a) or (b). (SUBTOTAL: 34)

    d. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for her criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of her intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about her involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw her plea of guilty.

Accordingly, the final adjusted offense level is **31**.

### Obligations of the United States Attorney's Office

8. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

9. The Defendant understands that there is no agreement as to her criminal history or criminal history category, and that her criminal history could alter her offense level if she is a career offender or if the instant offense was a part of a pattern of criminal conduct from which she derived a substantial portion of her income.

### Rule 11(c)(1)(C) Plea

10.  **The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of eight (8) years of imprisonment in the custody of the Bureau of Prisons is the appropriate sentence in this case.** This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, *either* party may elect to declare the agreement null and void. Should the Defendant so elect, she will be afforded the opportunity to withdraw her plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the defendant would not be able to withdraw his plea.

### Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

  a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. §1291 or otherwise, to appeal the Defendant's conviction.

  b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except both parties reserve the right to appeal any sentence other than **a sentence of eight (8) years** imprisonment in the custody of the Bureau of Prisons.

  c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

  d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

12. The Defendant agrees that she will not commit any offense in violation of federal, state or local law between the date of this agreement and her sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a

finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for her conduct by failing to acknowledge her guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw her guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that she may not withdraw her guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C)

## Restitution

13. Under Title 18 United States Code, Section 1593, any identified victim is entitled to mandatory restitution, including losses suffered by the victim as defined by Section 1593. The Defendant further agrees to fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including, but not limited to, copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea.

## Collection of Financial Obligations

14. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

15. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

16. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to us promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Aaron S.J. Zelinsky
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-17-2017
Date

Heather Wagoner

I am Ms. Wagoner's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with her. She advises me that she understands and accepts its terms. To my knowledge, her decision to enter into this agreement is an informed and voluntary one.

4/17/17
Date

Sedira Banan, Esquire

AZ: USAO #2015R00708

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * CRIMINAL NO. ELH-16-271 |
| **v.** | * |
| | * (Conspiracy to Commit Sex |
| **HEATHER WAGONER,** | * Trafficking, 18 U.S.C. § 1594(c); Aiding |
| | * & Abetting, 18 U.S.C. §2) |
| **Defendant** | * |
| | * |

\*\*\*\*\*\*\*

### CRIMINAL INFORMATION

### COUNT ONE
(Conspiracy to Commit Sex Trafficking)

The United States Attorney for the District of Maryland charges that:

Between on or about October 15, 2014 and on or about December 19, 2014, in the District of Maryland and elsewhere, the defendant,

### HEATHER WAGONER,

did combine, conspire, confederate, and agree with others to violate Title 18, United States Code, Section 1591(a)(1), that is,

    a.    in and effecting interstate and foreign commerce, to knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means "Victim 1," and

    b.    having had a reasonable opportunity to observe that "Victim 1" had not obtained the age of 18 years old, knowing that "Victim 1" would be caused to engage in a commercial sex act.

18 U.S.C. § 1594(c)

 

STEPHEN M. SCHENNING
ACTING UNITED STATES ATTORNEY

Date: May ___, 2017.

## Attachment A

## Statement of Facts

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Heather Wagoner, age 31, resided outside of Maryland in fall and winter 2014. Between October 15, 2014 and December 19, 2014, Wagoner and Rolando Bass ("Bass") conspired together to engage in sex trafficking of Jane Doe, a female minor who was 16 years old at the time. Wagoner had a reasonable opportunity to observe Jane Doe was under 18 years old.

During December of 2014, Wagoner and Bass used the website Backpage to solicit individuals for prostitution in Maryland. Posted on the website were photographs of Jane Doe with false representations of her age. One of the photographs posted on Backpage contained a picture of Wagoner and Jane Doe, both unclothed and in a bed together, leaning in as if about to kiss. Another contained a picture of Jane Doe wearing only underwear, titled: "Who wants to have fun? 23," even though Jane Doe was approximately 16 years old at the time of the ad.

Wagoner provided instructions to Jane Doe for prostitution activities, knowing that Jane Doe would engage in sexual acts with customers in the State of Maryland. Wagoner also provided Jane Doe with condoms for the "dates."

Wagoner answered phone calls from "johns" purchasing "dates" with Jane Doe, and communicated information to Bass to facilitate Jane Doe's "dates," including the price of "date," and how long the "date" would take. Wagoner and Jane Doe split the proceeds from the dates, and Wagoner used some of her proceeds to pay Bass for driving Jane Doe. For two weeks of this time period, Jane Doe resided with Wagoner at various hotels in West Virginia and Maryland.

On December 19, 2014, detectives with the Frederick City Policy Department, acting in an undercover capacity, contacted the phone number provided in the Backpage ads for Jane Doe and spoke with Wagoner, who was in West Virginia. The detectives arranged a meeting at a hotel in Frederick, MD. Bass drove Jane Doe to a hotel. Jane Doe proceeded to the hotel room, where investigators subsequently identified her as a minor. Several minutes later, Bass arrived at the lobby of the hotel, waiting to pick up Jane Doe after the intended "date." Investigators arrested Bass.

Investigators obtained a search warrant for Bass's phone, which indicated numerous communications between Bass and Wagoner. The phone also contained text messages relating to December 19, 2014. On that date, Bass texted Wagoner: "Any calls?" Wagoner responded, "Hell no." Later on, Wagoner texted Bass saying, "She ready. She n lobby."

After Bass's phone had been seized by police on December 19, 2014, Wagoner continued to text him regarding the conspiracy to sex traffic Jane Doe. These texts included Wagoner stating to Bass: "Yo go one n hr a reg. N Winchster for a buck." Wagoner meant that a "regular customer"

wanted to engage in prostitution with Jane Doe in Winchester, Maryland, for $100. When Bass did not respond, Wagoner texted: "Yo what is going on? Call me?" Receiving no response, she texted "wtf," a common slang acronym for "what the fuck."

Phone location data indicated that Wagoner was in the area of Martinsburg, West Virginia, on December 19-20, 2014. During this time, the phone was in Wagoner's possession, though it was not registered to her name.

Investigators arrested Wagoner on July 1, 2016. She was incarcerated pending trial. In January of 2017, Wagoner wrote a letter to a friend, seeking to solicit false testimony from that individual on her behalf. Wagoner wrote: "I have people testifying falsely against me for him. Why can't I do it back?" Wagoner also instructed that the friend, "not write me back at the facility I'm at. Instead write me thru [my father] . . . and sign your letter Your Pops."