IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

                                 Criminal No. ELH-16-0271

HEATHER WAGONER,

    *Defendant*.

## MEMORANDUM OPINION

Heather Wagoner, defendant, was convicted in 2016 for sex trafficking a minor, for which she is serving a sentence of 96 months' imprisonment at Federal Medical Center ("FMC") Carswell, with credit dating to June 30, 2016. ECF 62. Defendant filed two pro se motions for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF 66; ECF 69. Thereafter, through appointed counsel, defendant filed an additional motion for compassionate release (ECF 74), as well as a supporting memorandum (ECF 76), and additional exhibits.  I shall refer to ECF 66, ECF 69; ECF 74, and ECF 76 collectively as the "Motion."

The government opposes the Motion.   ECF 78.   It has submitted multiple exhibits. Defendant has replied. ECF 80.

No hearing is necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

## I.  Background

A grand jury in the District of Maryland returned an indictment against the defendant on June 1, 2016 (ECF 1), charging her with sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a) (Count One), and use of interstate facilities to promote enterprise involving prostitution,

in violation of 18 U.S.C. § 1952(a)(3) (Count Two). Defendant was arrested on June 30, 2016. ECF 54 at 1.

On May 9, 2017, defendant entered a plea of guilty to an Information (ECF 44) charging her with conspiracy to commit sex trafficking, in violation of 18 U.S.C. 1594(c). ECF 49. The plea was tendered pursuant to a Plea Agreement. ECF 46. Under Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a term of imprisonment of eight years. *Id.* ¶ 10.

The Plea Agreement included a stipulation of facts. *Id.* at 9. According to the factual stipulation, between October 15, 2014 and December 19, 2014, Wagoner conspired to engage in sex trafficking of Jane Doe, a female minor who was 16 years old at the time. *Id.* Wagoner and her coconspirator used the website Backpage to solicit individuals for prostitution in Maryland, arranged "dates" for Jane Doe, and collected the proceeds from the "dates." *Id.* And, in January 2017, while defendant was incarcerated pending trial, she wrote a letter to a friend, seeking to solicit false testimony from that individual on her behalf. *Id.*

Sentencing was held on July 20, 2017. ECF 61. According to the Presentence Investigation Report ("PSR," ECF 54), defendant was 31 years old. *Id.* at 3. At the time of sentencing, Wagoner was five foot five inches and weighed 247 pounds, resulting in a body mass index ("BMI") of 41.1. *Id.* ¶ 54. Wagoner was diagnosed with multiple sclerosis ("MS") in July 2015 and faced related outer limb numbness, fatigue, and pain. *Id.* ¶ 55. She also suffered from serious mental health and substance abuse problems. *Id.* ¶¶ 58-66.

The PSR reflected a final offense level of 35. *Id.* ¶ 32. And, the defendant had a Criminal History Category of IV because of her prior convictions for conspiracy to distribute cocaine and a federal forgery offense, and because her instant offense was committed while she was on federal supervised release. *Id.* ¶¶ 36, 37, 39, 40.

Based on a final offense level of 35 and a Criminal History Category of IV, Wagoner's advisory sentencing guidelines ("Guidelines") called for a sentence ranging between 235 months and 293 months of imprisonment. *Id.* ¶ 77. However, as noted, the "C Plea" called for a sentence of incarceration of 96 months.

Consistent with the C Plea, the Court imposed a sentence of 96 months' imprisonment, with credit for time served in federal custody from June 30, 2016. ECF 62. Therefore, the defendant has served about 54 months of her sentence, or roughly 56%. She has a projected release date of June 17, 2023. ECF 76-1 (Inmate Data) at 4.

Defendant continues to suffer from severe obesity, MS, numerous related symptoms, and major depressive disorder. ECF 76 at 2. Due to the defendant's medical needs, she was designated to FMC Carswell. *Id.* Her BOP medical care assignment is classified as a Care Level 3. ECF 76 at 2.

Wagoner submitted a request for compassionate release to the Warden on June 11, 2020. ECF 76 at 11. The request was denied on September 10, 2020. ECF 76-3.

## II.  Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).   One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part

of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018); *see United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.  *McCoy*, 981 F.3d at 276.

Under § 3582(c)(1)(A), the court may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds

4

that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with applicable policy statements issued by the Sentencing Commission.

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. But, in U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might warrant compassionate release. *See McCoy*, 981 F.3d at 276. The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t), as well as § 994(a)(2)(C). *McCoy*, 981 F.3d at 276. However, as the *McCoy* Court observed, the policy statement was issued in 2006 and was last updated in November 2018, prior to the enactment of the First Step Act in December 2018. *Id.*

In particular, U.S.S.G. § 1B1.13 provides that, on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community

5

(§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."   U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1 to U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   **Medical Condition of the Defendant**.—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
>   (I)  suffering from a serious physical or medical condition,
>
>   (II) suffering from a serious functional or cognitive impairment, or
>
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Application Note 1(B) provides that age is an extraordinary and compelling reason where the defendant is at least 65 years of age, has serious physical or mental health issues, and has served at least 10 years in prison or 75% of the sentence.  Application Note 1(C) concerns Family Circumstances.  Application Note 1(D), titled "**Other Reasons**," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the

reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. However, the Court may not rely on the Program Statement. Rather, the Court must consider the Sentencing Commission's policy statements. *United States v. Taylor*, 820 F. App'x 229, 229-30 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction").

As noted, "[w]hen deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see also* 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"). However, as indicated, the policy statement in § 1B1.13 of the Guidelines was last updated in November 2018, before the enactment of the First Step Act. Thus, it is only "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). In other words, "[b]y its plain terms…§ 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *Id.* at *7; *see also United States v. Zullo,* 976 F.3d 228, 230 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1108-12 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020).

Accordingly, "[a]s of now, there is no Sentencing Commission policy statement 'applicable' to [] defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining

whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283.   Therefore, district courts are "'empowered…to consider any extraordinary and compelling reason for release that a defendant might raise.'"   *McCoy*, 981 F.3d at 284 (quoting *Zullo*, 976 F.3d at 230).

Nevertheless, as the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020).  If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 826-27; *see also United States v. Trotman*, 829 Fed. App'x 607, 608-9 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), the court must consider the sentencing factors under 18 U.S.C. § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).   But, compassionate release is a "rare" remedy.  *Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### III.  COVID-19[1]

Defendant filed her Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years."  *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 461 F. Supp. 3d 214, 223 (D. Md. 2020). That crisis is COVID-19.[2]   The World Health

---

[1] The Court may take judicial notice of matters of public record.  *See* Fed. R. Evid. 201.

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease*

Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the COVID-19 pandemic is the worst public health crisis that the world has experienced since 1918. *See United States v. Hernandez*, 451 F. Supp. 3d 301, 305 (S.D.N.Y. 2020) ("The COVID-19 pandemic . . . . presents a clear and present danger to free society for reasons that need no elaboration."). Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories . . . ." *Antietam Battlefield KOA*, 461 F. Supp. 3d at 223 (citation omitted). And, the pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, 818 Fed. App'x 393 (6th Cir. 2020). Indeed, for a significant period of time, life as we have known it came to a halt. Although many businesses and schools reopened for a period of time, many are again subject to closure or substantial restrictions, due to the virulent resurgence of the virus in recent weeks.

The Court must also underscore that the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL &

---

*and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last accessed June 15, 2020).

PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  As of January 19, 2021, COVID-19 has infected more than 24.1 million Americans and caused over 400,200 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed Jan. 19, 2021).

Unfortunately, there is currently no cure or proven treatment that is generally available for the virus.  But, the country has recently seen the rollout of two vaccines for COVID-19 (Pfizer and Moderna). The vaccines have primarily been made available to health care workers and the elderly in nursing homes, but in recent days the criteria for eligibility has expanded. That said, the rollout has not been as expeditious as had been hoped.

Notably, the BOP published "COVID-19 Vaccine Guidance" on January 4, 2021 (version 7.0). *COVID-19 Vaccine Guidance*, Federal Bureau of Prisons Clinical Guidance (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Administration of the COVID-19 vaccine (Pfizer and Moderna) will "align with [recommendations of] the Centers for Disease Control and Prevention." *Id.* at 4. Therefore, once the BOP receives the vaccine, a prisoner at heightened risk will receive priority for receipt of the vaccine. *Id.* at 6.

The BOP reportedly received its first shipment of vaccines on December 16, 2020. Walter Pavlo, F*ederal Bureau of Prisons Starts Vaccination of Staff, Inmates Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/ federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f.  According to a press release dated January 15, 2021, the BOP has administered 17,189 vaccine doses to staff and inmates at sixty-eight BOP institutions.  *Update on COVID-19 Vaccinations*, U.S. Department of Justice, Federal Bureau of Prisons (Jan. 15, 2021), https://www.bop.gov/resources/news/pdfs/20210115_press_release_vaccination.pdf                    (last

accessed January 19, 2021).  As of January 15, 2021, 1,027 staff and 1,051 inmates have received a series of two doses.  *Id.*

Of relevance here, the Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, and again on July 17, 2020, the CDC revised its guidance as to medical conditions that pose a greater risk of severe illness due to COVID-19. Then, on November 2, 2020, to reflect the most recently available data, the CDC again revised its guidance.  *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 2, 2020), https://bit.ly/38S4NfY.   According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; COPD; being immunocompromised; obesity, where the body mass index ("BMI") is 30 or higher; serious heart conditions, including heart failure and coronary artery disease; sickle cell disease; smoking; pregnancy; and Type 2 diabetes.  *Id.*  The CDC has also indicated that the risk for severe illness from COVID-19 increases with age, with older adults at highest risk.  *See Older Adults At Greater Risk of Requiring Hospitalization or Dying if Diagnosed with COVID-19*, CTRS. FOR DISEASE CONTROL & PREVENTION (Nov. 27, 2020), https://bit.ly/3g1USZ1.

In addition, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19. The factors that might increase the risk include asthma, cerebrovascular disease, hypertension, liver disease, cystic fibrosis, neurologic conditions, a

compromised immune system, overweight (where the BMI is between 25 and 30), pulmonary fibrosis, thalassemia (a type of blood disorder), and Type 1 diabetes. *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed December 9, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see Cameron*, 2020 WL 2569868, at *1; *see also United States v. Mel*, TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("In light of the shared facilities, the difficulty of social distancing, and challenges relating to maintaining sanitation, the risk of infection and the spread of infection within prisons and detention facilities is particularly high."). Prisoners are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers, nor are they necessarily able to separate themselves from others. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely"); *accord Brown v. Plata*, 563 U.S. 493, 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and employees of the Bureau of Prisons ("BOP") from COVID-19.  The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction.  *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Former Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19.  *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020).  Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General.  *See* Pub. L. No. 116-136, § 12003(b)(2).  On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."  *Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ."  *Id.*

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus.  *Seth*, 2020 WL 2571168, at *2.  Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected.  Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

As with the country as a whole, the virus persists in penal institutions.[3]  As of January 19, 2021, the BOP had 123,052 federal inmates and 36,000 staff.  And, as of the same date, the BOP reported that 4,718 inmates and 2,049 BOP staff currently tested positive for COVID-19; 38,535 inmates and 3,553 staff have recovered from the virus; and 190 inmates and three staff members have died from the virus.  Moreover, the BOP has completed 98,614 COVID-19 tests.  *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 19, 2021).  *See COVID-19*, FED. BUREAU OF PRISONS, https://bit.ly/2XeiYH1.

At FMC Carswell, where the defendant is a prisoner, as of January 19, 2021, the BOP reported that 27 inmates and three staff have tested positive for COVID-19 and 522 inmates and one staff have recovered at the facility. And, the facility has completed 1290 tests.  There have been six reported inmate deaths.  *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 19, 2021).

## IV.  Discussion

Wagoner has moved for compassionate release on the ground that her health conditions render her particularly vulnerable to COVID-19.  *See* ECF 76 at 11-13. In particular, defendant

---

[3] The *New York Times* reported in June 2020 that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2. More recently, on October 29, 2020, the *New York Times* reported that, "[i]n American jails and prisons, more than 252,000 people have been infected and at least 1,450 inmates and correctional officers have died" from COVID-19.  *See Cases in Jails and Prisons*, N.Y. TIMES (Oct. 29, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

On November 21, 2020, the *New York Times* reported that "U.S. correctional facilities are experiencing record spikes in coronavirus infections this fall. During the week of Nov. 17, there were 13,657 new coronavirus infections reported across the state and federal prison systems.*" America Is Letting the Coronavirus Rage Through Prisons*, N.Y. TIMES (Nov. 21, 2020), https://www.nytimes.com/2020/11/21/opinion/sunday/coronavirus-prisons-jails.html.

suffers from severe obesity with a BMI of 44.1 as well as MS and related medical conditions. *Id.*; *see* ECF 76-2 (Medical Records). Moreover, defendant contends that she is not a danger to the community and that the factors under 18 U.S.C. § 3553(a) favor her release. *Id.* at 13-15.

The government concedes that at least one of defendant's medical conditions—obesity— constitutes an "extraordinary and compelling" reason for release. ECF 78 at 16. But, the government argues that defendant is not eligible for release because she poses a danger to the community. *Id.* at 19-24. And, the § 3553(a) factors militate against a reduction of her sentence. *Id.* at 24-26.

As both parties acknowledge, Wagoner has presented a medical condition that qualifies as a compelling basis to grant compassionate release. Wagoner's medical records show that she currently has a BMI of 44.1, which constitutes severe obesity. *See* U.S. Department of Health and Human Services, "Calculate Your Body Mass Index," https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. The CDC identifies obesity as a COVID-19 risk factor supported by the "strongest, most consistent evidence" drawn from multiple medical studies of the effects of the virus. *People of Any Age with Underlying Medical Conditions*, Ctrs. For Disease Control & Prevention (Nov. 2, 2020), https://bit.ly/38S4NfY.

Further, the CDC cautions that the "more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16. Here, in addition to being obese, defendant has MS and a slew of related conditions, which may aggravate her vulnerability to COVID-19.

And, numerous courts have found that, in light of the COVID-19 pandemic, serious chronic

medical conditions, including severe obesity, qualify as a compelling reason for compassionate release. *See, e.g., United States v. Williams*, PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020) (finding obese defendant with a BMI of 32.5 qualified for compassionate release in light of COVID-19); *United States v. Staten*, PJM-01-284-4, 2020 WL 4904270, at *2 (D. Md. Aug. 18, 2020) (finding an "extraordinary and compelling reason" for compassionate release based on a BMI of 38); *United States v. Dawson*, No. 18-40085, 2020 WL 1812270, at *7 (D. Kan. Apr. 9, 2020) (granting compassionate release based on a defendant's obesity: "He has a medical condition (obesity) that the CDC recognizes puts him at an increased risk of developing serious illness if he were to become infected with COVID-19."); *United States v. Daniels*, No. 19-00709, 2020 WL 181342, at *2 (N.D. Cal. Apr. 9, 2020) (finding severe obesity constitutes compelling reason for release).

Accordingly, I am satisfied that Wagoner readily satisfies the "extraordinary and compelling" prong of the § 3582 analysis.

The Court must also consider whether, if released, Wagoner would pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Relief is appropriate under 18 U.S.C. § 3582(c)(1)(A) only if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). To determine whether a defendant is a danger to the community, the Court must consider the factors under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community.

The government urges that conclusion, citing, *inter alia*, the seriousness of Wagoner's offense, the defendant's prior criminal history, and her failure to undergo sex offender treatment in custody. ECF 78 at 23-24.

Wagoner acknowledges the seriousness of her offense, but she contends that it did not involve weapons or violence. ECF 76 at 14. Further, she argues that the "nature and circumstances" of her offense "are rooted in financial desperation, not prurient interest in minors." ECF 80 at 5. And, she contends that her circumstances upon release will be very different from her previous circumstances, when she lacked "fundamental stabilizers" in her life because now she will reside with her husband. *Id.* at 6.

The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As I see it, the factors under § 3553(a) and § 3142(g) do not weigh in favor of reducing Wagoner's sentence at this time. To be sure, Wagoner's life was marked by the tragic loss of her mother when the defendant was a child. ECF 54, ¶ 46. She also has a history of drug and alcohol abuse. *Id.* ¶ 47. And, as noted, she has a host of physical and mental health problems. Her mental health problems include several prior hospitalizations. *Id.* ¶¶ 58-62.

But, the seriousness of this offense, coupled with Wagoner's prior record, are particularly relevant to the analysis. Defendant was convicted in Maryland of conspiracy to distribute cocaine in 2009. *Id.* ¶ 36. She was sentenced to five years, of which two and a half years were suspended. *Id.* As to the State sentence of two and a half years, defendant served about 13 or 14 months of incarceration. *Id.* She violated her parole, and her parole was revoked. *Id.* Therefore, she served an additional period of incarceration of about six months. *Id.* Then, in 2013, defendant was

convicted in Virginia of a federal forgery offense. *Id.* ¶ 37. She was sentenced to time served, which amounted to about six months of incarceration. But, she violated the terms of her supervised release multiple times, including to commit the instant offense. *Id.*

Further, defendant's conduct over the past four and a half years, while in custody, is an important indicator of whether she remains a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A)(ii). Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)); *see also United States v. Scott*, CCB-95-202, 2020 WL 2467425, at *4 (D. Md. May 13, 2020). In this regard, it is notable that Wagoner has obtained numerous disciplinary infractions throughout her time in prison. ECF 76-5; ECF 78-4. And, defendant has not completed drug or sex offender treatment, the importance of which was discussed at length during sentencing. *See* ECF 78-4; ECF 78-1 (Sentencing Transcript) at 22-23. Although this is not necessarily a circumstance of defendant's doing, it is relevant with regard to rehabilitation.

Moreover, the defendant has only served about 56% of her sentence, exclusive of good time credit. And, her sentence was significantly below the Guidelines range.

Given the facts of the offense, coupled with the defendant's prior criminal history and the abbreviated time that defendant has served to date, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time. But, **nothing in this Memorandum Opinion is meant to preclude the BOP from releasing Wagoner to home confinement, pursuant to 18 U.S.C. § 3642(c).**

## V.  Conclusion

For the foregoing reasons, I shall deny the Motion, *without prejudice*.

An Order follows, consistent with this Memorandum Opinion.


Date:   January 21, 2021                                    _____/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge